[No. B033366. Second Dist., Div. Three. June 19, 1988.]

FRED JENSON, Plaintiff and Appellant, v.
KENNETH I. MULLEN, CONSULTING ENGINEERS, INC. et al.,
Defendants and Respondents.

**COUNSEL**

Sherman, Dan & Portugal and Marcus A. Petoyan for Plaintiff and Appellant.

Covey and Covey, Koslov, Erickson & Cady, Jack D. Dwosh and Janel Tritch for Defendants and Respondents.

**OPINION**

**DANIELSON, Acting P. J.**—Fred Jenson (plaintiff) appeals from judgments in favor of Kenneth I. Mullen, Consulting Engineers, Inc. (Mullen) and C & S Sewers Systems (C & S Sewers; collectively, defendants) after defendants' motions for summary judgment were granted.

We reverse the judgments.

### FACTUAL STATEMENT

The basic facts are undisputed: On or about September 25, 1985, plaintiff was operating a motorcycle for recreational purposes in Malibu along a pathway on private property, beyond Escondido Place. He sustained injuries when he crashed into an excavation (a percolation test hole) in the pathway.

Marvin Cahn (Cahn), the owner of the property on which this section of the pathway was located, had contracted with Mullen to perform percolation tests on the property in contemplation of development of the property.

Pursuant to its contract with Mullen, C & S Sewers was directed to dig, and dug, the hole at the site.

## PROCEDURAL STATEMENT

On February 28, 1986, the complaint was filed and alleged a single cause of action for negligence against Cahn, Mullen and C & S Sewers.[1]

Defendants each filed answers generally denying the material allegations of the complaint and setting forth various affirmative defenses.

On December 2, 1987, judgment was entered in favor of Cahn following the granting of his motion for summary judgment made on the ground that, as the owner of the subject property, Cahn was immune from liability, pursuant to Civil Code section 846[2] for any injuries occasioned by plaintiff's admittedly recreational use of that property.

The motions of Mullen and C & S Sewers for summary judgment were denied without prejudice after a hearing on October 16, 1987. They had urged that they, too, were entitled to the immunity afforded by section 846 as licensees of the subject property.

On January 29, 1988, following a hearing, the renewed motions for summary judgment by defendants Mullen and C & S Sewers were granted.

On March 23, 1989, judgments were entered in favor of Mullen and C & S Sewers.

## ISSUES PRESENTED

This appeal presents three legal issues: (1) What was the legal status of defendants, i.e., business invitees or licensees, in relation to their activities on Cahn's real property; (2) does such status confer the "interest in real property" needed to invoke the immunity provisions of section 846; and (3) should the immunity provisions of section 846 be extended to cover agents of the landowner?

## DISCUSSION

As a general rule, "[e]veryone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." (§ 1714, subd. (a).)

---

[1] The County of Los Angeles was also named as a defendant in the complaint but summary judgment was entered as to the county, which is not a party to this appeal.

[2] All further section references are to the Civil Code unless otherwise indicated.

The exception to this rule in section 846 provides in pertinent part: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose . . . ."

In order for the immunity provisions of section 846 to apply the party seeking to invoke that section must first establish that he is "[a]n owner of any estate or any other interest in real property, whether possessory or nonpossessory."

"[O]wnership . . . is the right of one or more persons to possess and use [the property] to the exclusion of others." (§ 654)

## I. *Defendants' Legal Status on Cahn's Real Property*

 Defendants' position is that they acted in the capacity of licensees of the land when they caused the subject hole to be dug.

We disagree.

 With respect to real property, a licensee is a person or entity authorized to do a particular act or acts on the property of another without possessing any estate therein. (See, e.g., *Guerra* v. *Packard* (1965) 236 Cal.App.2d 272, 285 [46 Cal.Rptr. 25].) A license in this sense is a personal privilege, conferred either by a written or oral agreement, to perform a certain act or acts without conferring any interest in the land. (See, e.g., *Fisher* v. *General Petroleum Corp.* (1954) 123 Cal.App.2d 770, 776 [267 P.2d 841]; *Goetze* v. *Hanks* (1968) 261 Cal.App.2d 615, 626 [68 Cal.Rptr. 150]; *Beckett* v. *City of Paris Dry Goods Co.* (1939) 14 Cal.2d 633, 637 [96 P.2d 122].)

 From the above it is clear that defendants were not licensees under the facts of this case. The record establishes that the contract between Cahn and Mullen conferred no "privilege," i.e., benefit, on defendants because of their agreement to excavate or their act of excavating the subject hole on Cahn's property. Instead, the import of the contract in this regard was simply to give defendants permission to enter and be on Cahn's property solely for the purpose of performing their contractual obligation, i.e., perform percolation tests, which included excavating the subject hole, for the sole benefit of Cahn. (See, e.g., *Miller* v. *Desilu Productions, Inc.* (1962) 204 Cal.App.2d 160, 163 [157 P.2d 57]; cf. *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 910 [159 Cal.Rptr. 125] (contract giving defendant the right to stockpile dirt on the property of another for defendant's benefit created a license).)

■ ■ ■ ■ ■ Based on our review of the applicable law we conclude that the status of defendants for the purpose of excavating the subject hole was, instead, simply that of business invitees[3] on Cahn's property. ■ It has been established that anyone who is working on the property of another in the interest of that other or the party in control of the premises is an invitee. (See, e.g., *Miller* v. *Pacific Constructors, Inc.* (1945) 68 Cal.App.2d 529, 545 [157 P.2d 57]; *Oldham* v. *Atchison, T. & S. F. Ry. Co.* (1948) 85 Cal.App.2d 214, 218 [192 P.2d 516]; *Bickham* v. *Southern Cal. Edison Co.* (1953) 120 Cal.App.2d 815, 819 [263 P.2d 32].)[4]

## II. *Applicability of Section 846*

■ We hold that defendants' status as business invitees of the landowner does not satisfy the prerequisite that the party seeking to invoke the immunity provisions of section 846 be "[a]n owner of any estate or any other interest in real property, whether possessory or nonpossessory." Although such invitee may be entitled to be present on the property during such time as the work is being performed, such presence does not convey any estate or interest in the property.

## III. *Agents of the Landowner*

■ C & S Sewers urges this court to extend the immunity provisions of section 846 to "cloak" it from liability under the theory that, as the agent of Cahn, the landowner, C & S Sewers was simply doing the bidding of the landowner and, thus, it should share in the latter's immunity from claims arising out of the use of the landowner's real property. As authority for that proposition C & S Sewers relies on *Freitas* v. *J.G Boswell Co.*■ (Cal.App.).

We reject C & S Sewers' proposed construction of section 846 as patently unsound. ■ Initially, we point out its reliance on *Freitas* is misplaced. *Freitas* is not a published case. Accordingly, it cannot be cited as precedent and is of no legal import. (Cal. Rules of Court, rule 977(a).)

---

[3] We point out that the duty of care owed by a landowner to a person on his land is no longer determined by that person's status as a trespasser, licensee, or invitee. However, these classifications remain extant factors with respect to determining such liability. (See, e.g., *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

[4] Although the *Bickham* court referred to the worker as "a business licensee, or an invitee" (*Bickham* v. *Southern Cal. Edison Co., supra,* 120 Cal.App.2d 815, 819) the court was not utilizing the term licensee in the sense of a license to make use of another's real property, as defined, *ante*. Instead, a licensee in the "*Bickham*" sense merely refers to a person who enters or remains on the premises solely by virtue of the possessor's consent. (*Ibid.,* citing to Rest., Torts [now, 2d] § 330.)

■ Secondly, we point out that an agent's liability to a third person does not depend on his relationship with his principal, e.g., the landowner. Instead, an agent's responsibility to the third party arises "[w]hen his [own] acts are wrongful in their nature." (§ 2343, subd. 3; cf. §§ 2338, 2339 (principal's liability to third parties is dependent on the relationship between the principal and agent).)

■ Finally, we conclude that the purpose of section 846 would be neither served nor promoted by extending the immunity afforded by section 846 to agents of a landowner principal. The purpose of section 846 is to encourage property owners to allow the general public to recreate on their private property without charge (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168]), instead of withdrawing the land from recreational access, by immunizing the landowner from tort liability to which the landowner would otherwise be at risk for allowing recreational use of his property. (See, e.g., *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727, 730 [191 Cal.Rptr. 160].)

### DECISION

The judgments are reversed. Appellant is awarded costs on this appeal.

Arabian, J., concurred. Croskey, J., concurred in the result.